PALILA (Psittirostra bailleui), an endangered species; Sierra Club, a non-profit corporation; National Audubon Society, a non-profit association; Hawaii Audubon Society; a non-profit association; and Alan C. Ziegler, Plaintiffs,

v.

HAWAII DEPARTMENT OF LAND AND NATURAL RESOURCES; and Susumu Ono, in his capacity as chairman of the Hawaii Board of Land and Natural Resources, Defendants,

and

Sportsmen of Hawaii, Inc., Hawaii Island Archery Club, Hawaii Rifle Association, Gerald Kang, Kenneth Funai, John Wong and Irwin Kawano, Defendant Intervenors.

Civ. No. 78–0030.

United States District Court,
D. Hawaii.

Dec. 6, 1985.

Michael R. Sherwood, Sierra Club Legal Defense Fund, Inc. San Francisco, Cal. (William S. Hunt, Paul, Johnson & Alston, of counsel, Honolulu, Hawaii), for plaintiffs.

Edwin P. Watson, Deputy Atty. Gen., Corinne Watanabe, Atty. Gen., Honolulu, Hawaii, for defendant.

Katsuya Yamada, Hilo, Hawaii for defendant intervenors.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

SAMUEL P. KING, District Judge.

Argument on plaintiffs' Motion for Summary Judgment was heard on November 1, 1985, with Michael R. Sherwood, Esq., of the Sierra Club Legal Defense Fund representing plaintiffs, Edwin P. Watson, Esq., Deputy Attorney General representing defendants, and Katsuya Yamada, Esq., representing defendants/intervenors.

In 1979, this court granted summary judgment for plaintiffs in *Palila v. Dept. of Land and Natural Resources,* 471 F.Supp. 985 (D.Haw.1979), *aff'd* 639 F.2d 495 (9th Cir.1981), (hereafter *PALILA I*). In this decision, I found that the Palila (*Psittirostra bailleui,* now referred to as *Loxioides bailleui* ) was an endangered species, that its range and critical habitat was the mamane-naio forest, that the feral sheep and goats were a threat to the Palila's critical habitat, that the state's proposed alternative programs were inadequate, that maintenance of the feral sheep and goats in the Palila's critical habitat constituted a "taking" of an endangered species in violation of 16 U.S.C. § 1538(a)(1)(B).

The prior rulings dealt only with the effect of the feral sheep and goats on the critical habitat of the Palila, since at that time there existed a lack of evidence as to the effect of mouflon sheep on the critical habitat. Subsequently several studies on the mouflon sheep have been issued, including the "Final Report: Ecology of Mouflon Sheep on Maunakea", by Jon G. Giffen of the DLNR Division of Forestry and Wildlife; the study entitled "Annual Variation in the Distribution, Abundance and Habitat Response of the Palila *(Loxioides bailleui)* ", published in The Auk, A Quarterly Journal of Ornithology, Vol. 101, p. 647 (Oct. 1984) and co-authored by Drs. J. Michael Scott, Stephen Mountainspring, Charles van Riper III, Cameron B. Kepler, and Messrs. James D. Jacobi, Timothy A. Burr, and Jon G. Giffen (hereafter "the Auk study"); and the Draft Revised Palila Recovery Plan dated December 1984 and prepared by the U.S. Fish and Wildlife Service.

Armed with these studies and the deposition testimony of the authors, plaintiffs notified defendants that they considered the coexistence of mouflon sheep in the critical habitat of the Palila to be a "taking" in violation of 16 U.S.C. § 1538(a)(1)(B) and demanded removal of the mouflon. After subsequent unsatisfactory negotiations, plaintiffs amended the complaint in February of 1985 to include

mouflon sheep and then sought summary judgment. Plaintiffs assert that the law remains unchanged and that there is no genuine issue as to any material fact regarding whether mouflon sheep are "harming" the Palila.

THE STANDARD:

On a motion for summary judgment, "(t)he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.; *Deukmejian v. U.S. Postal Service*, 734 F.2d 460 (9th Cir.1984); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675 (9th Cir.1984).

THE LAW:

■ The Endangered Species Act of 1973 provides that it is "unlawful for any person subject to the jurisdiction of the United States to ... take any such species within the United States or the territorial sea of the United States...." 16 U.S.C. § 1538(a)(1)(B). "Take" as used in this section is defined in 16 U.S.C. § 1532(19) as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."

When summary judgment was granted in this case, "harm" was defined in the regulations at 50 C.F.R. § 17.3 (1978) as

"an act or omission which actually injures or kills wildlife, including acts which annoy it to such an extent as to significantly disrupt essential behavioral patterns, which include, but are not limited to, breeding, feeding, or sheltering; significant environmental modification or degradation which has such effects...."

Defendants argue that subsequent to the *Palila I* decision the definition of harm has been amended to incorporate a much narrower standard, essentially outlawing an act "which actually kills or injures wildlife." I note that for a time the U.S. Fish and Wildlife Service seemed to support such a redefinition, see 46 Fed.Reg. 29490 (June 2, 1981), however the amended definition currently in effect does not embody a substantial change.

"Harm" in the definition of "take" in the Act means an act which actually kills or injures wildlife. Such an act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering.

50 C.F.R. § 17.3 (1984); 46 Fed.Reg. 54748 (Nov. 4, 1981). Admitting that this amendment was substantially closer to the previous definition than their first proposed amendment, the U.S. Fish and Wildlife Service explained their position as follows:

In proposing a redefinition, ... the Service did not intend to imply that significant habitat destruction which could be shown to injure protected wildlife through the impairment of its essential behavioral patterns was not subject to the Act. This misperception has been eliminated in the final rule. *Id.*

My finding in *Palila I* that "harm" included " 'significant environmental modification or degradation' which actually injures or kills wildlife," 471 F.Supp. at 995, remains consistent with the law and regulations in effect.

GENUINE ISSUES OF MATERIAL FACT:

■ The question then is whether the presence of mouflon sheep in the critical habitat of the Palila results in modification or degradation of the habitat which "significantly impair(s) essential behavior patterns and must result in actual injury to a protected wildlife specie." 46 Fed.Reg. 54750 (Nov. 4, 1981).

Plaintiffs assert that the aforementioned studies and depositions, and the 14 Status Reports filed herein by the DLNR establish that the presence of mouflon sheep in the critical habitat constitutes a taking pursuant to 16 U.S.C. § 1538(a)(1)(B) and that this court should grant summary judgment and order the complete eradication of mouflon sheep from the critical habitat area.

Defendants assert that conditions on Mauna Kea have changed since the *Palila I* decision and that genuine issues of material fact exist as to the Palila population, the mouflon population within the habitat, the extent of the destruction of the habitat caused by the presence of mouflon sheep, the extent of the mamane-naio regeneration since the *Palila I* decision, and whether complete removal of mouflon sheep is required or whether there can be some coexistence of mouflon sheep and Palila within the critical habitat.

Each of these contentions is supported by evidence or testimony sufficient to raise factual issues. The Thirteenth Status Report on Mauna Kea Feral Sheep, Feral Goat and Palila Management and Studies, filed on August 27, 1985, and the affidavit of Ronald L. Walker states that the July 1985 census survey shows a Palila population of 1,876, disputing plaintiffs' assertion that the population continues to decline. Mr. Walker's affidavit also disputes the amount of the mouflon population located within the critical habitat. The depositions of Mr. Giffin and Mr. Jacobi indicate that the degree of degradation of the mamane-naio forest caused by the mouflon sheep would appear to depend on the density of mouflon in the area, raising a dispute as to the necessity for complete removal of the mouflon. Both Mr. Giffin and Dr. Mountainspring testified at their depositions that they believed that some coexistence, albeit intensively managed, could be accommodated in the critical habitat.

Based on the argument and evidence before me, I find that there exist genuine issues as to the present definition of the critical habitat of the Palila and as to whether complete eradication of mouflon sheep, or for that matter all four-legged animals, is necessary. Therefore plaintiffs' Motion for Summary Judgment should be denied and the matter set for hearing so that this court may reexamine the dimensions of the requisite critical habitat of the Palila and determine to what extent mouflon sheep can coexist with the Palila within that critical habitat without significant impairment to that habitat sufficient to constitute a taking within the meaning of 16 U.S.C. § 1538(a)(1)(B).

IT IS SO ORDERED.