**Matthew James GRIFFIN, Plaintiff,**

v.

**Chase RIVELAND, individually and in his official capacity as the Secretary of Corrections for the State of Washington; Larry Kincheloe; James Spalding; James Blodgett; Ron Van Boening; Richard Morgan; Dennis F. Gleason;**

Gary Jones; Lt. Vanskike; Roger Benson; Nancy Frazier; Pat O'Connor; Sgt. Streck; and Officer Ayers, individually and in their official capacities as employees of the Washington Department of Corrections, Defendants.

No. CS-91-0441-JBH.

United States District Court, E.D. Washington.

April 8, 1993.

**268**

Matthew James Griffin, pro se.

Pat L. DeMarco, Asst. Atty. Gen., Olympia, for defendants.

## ORDER DENYING MOTION FOR RECONSIDERATION, IN PART, INTER ALIA

HOVIS, United States Magistrate Judge.

BEFORE THE COURT is the plaintiff's motion for reconsideration (Ct.Rec. 52), motion for interlocutory order (Ct.Rec. 51) and motion for extension of discovery deadline (Ct.Rec. 58).

### RECONSIDERATION

■ Motions for reconsideration serve a limited function. " '[T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Pyramid Lake Paiute Tribe v. Hodel,* 882 F.2d 364, 369 n. 5 (9th Cir.1989) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478, at 790); *see Frederick S. Wyle P.C. v. Texaco, Inc.,* 764 F.2d 604, 609 (9th Cir.1985); *see also Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665 (N.D.Ill.1982) (reconsideration available "to correct manifest errors of law or fact or to present newly discovered evidence."). Such motions are not the proper vehicle for offering evidence or theories of law that were available to the party at the time of the initial ruling. *Fay Corp. v. Bat Holdings I, Inc.,* 651 F.Supp. 307, 309

(W.D.Wash.1987); *see Keene Corp.* 561 F.Supp. at 565–66.

■ Plaintiff asks the court to reconsider certain portions of its order directing service of amended complaint (Ct.Rec. 48), notably: 1) the dismissal of plaintiff's federal law claim premised on alleged violations of the Western Interstate Corrections Compact; and 2) dismissal of plaintiff's federal law claim alleging negligent supervision and training of personnel.

Plaintiff alleges the court erred in its reliance on *Stewart v. McManus,* 924 F.2d 138 (8th Cir.1991). Plaintiff urges the court to adopt the reasoning set forth in *Cameron v. Mills,* 645 F.Supp. 1119 (S.D. Iowa 1986) and *Opinion of the Justices to the Senate,* 344 Mass. 770, 184 N.E.2d 353 (1962). *Cameron* held that the Iowa Interstate Corrections Compact had been transformed into federal law because of "advance" congressional consent via 4 U.S.C. § 112 (Crime Control Consent Act of 1934). *Opinion of the Justices* made the same holding with respect to the New England Interstate Corrections Compact. Each of these compacts provides for the exchange of inmates between states, similar to the Western Interstate Corrections Compact at issue in the instant case.

Both *Cameron* and *Opinion of the Justices* focus on language from the Crime Control Consent Act which is as follows:

> The consent of Congress is hereby given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements in compacts.

645 F.Supp. at 1127; 184 N.E.2d at 356.

Both courts emphasized the legislative history accompanying the Act. In 1961, the Act was amended to include Guam in the list of states and territories covered by the Act. The courts concluded that Congress intended its consent to extend to a broad range of compacts as evidenced by the following language from H.Rep. 434, 87th Cong. 1st Sess.,

May 25, 1961, P.L. 406, U.S.Code, Cong. & Adm.News, p. 1487:

> [T]here have been several interstate corrections compacts to which various states have adhered. Among other things, officials of correctional institutions in the United States have long recognized the desirability of providing specialized facilities and programs for particular categories of inmates held in prisons and correctional institutions. In many states the number of persons in such special categories usually is so small that separate programs and facilities and programs prove too costly. It is therefore considered desirable for the states and federal possessions to share facilities and/or facility costs.

645 F.Supp. at 1127; 184 N.E.2d at 356.

Plaintiff particularly emphasizes that one of the purposes of the 1961 amendment was to permit Guam to enter into the Western Interstate Corrections Compact (WICC). *Cameron*, 645 F.Supp. at 1127.

Despite the language from the House Report cited above, the undersigned still believes that the Western Interstate Corrections Compact does not confer federal rights on inmates which are enforceable via section 1983. First of all, the fact is that not one federal circuit has found an interstate corrections compact to be federal law.

*Opinion of the Justices* is a decision of the Supreme Judicial Court of Massachusetts. *Cameron* is a federal district court decision out of the Eighth Circuit which *preceded* a decision by the Eighth Circuit Court of Appeals in *Stewart* finding that the Iowa Interstate Corrections Compact had not become federal law. Although *Stewart* did not explicitly overrule *Cameron*, the implication is

obvious. *Cameron* and *Opinion of the Justices* are not persuasive authority.

■ Secondly, the undersigned does not find the 1961 amendment to the Crime Control Consent Act persuasive evidence that Congress specifically consented and approved of interstate corrections compacts. Congress was simply observing that these compacts had been entered into by various states. It is stretching it a bit to suggest that the transfer of convicted inmates between the correctional institutions of different states is related to the "prevention of crime" and the "enforcement of ... criminal laws and policies."[1] In addition, the court believes that the only reason Congress mentioned the Western Interstate Corrections Compact was because of the unique status of Guam as a U.S. Territory. Congress needed to approve Guam's participation in the compact. The fact that Guam was added to the list does not mean that Congress needed or intended to approve of the WICC.

■ Even if Congress did in some manner implicitly approve of interstate corrections compacts (and specifically, the Western Interstate Corrections Compact), the undersigned would still find that the WICC has not been transformed into federal law. Consent is only one part of the test. The second part of the test is that the subject matter of the agreement must be an appropriate subject for congressional legislation. *Cuyler*, 449 U.S. at 440, 101 S.Ct. at 708. The undersigned agrees with the conclusion of the *Stewart* court that "no federal interest exists in the state's transfer of inmates so long as the states satisfy the constitutional requirements in the treatment of prisoners." 924 F.2d at 142.[2]

---

1. Compare *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981) which held that the Interstate Agreement on Detainers had been congressionally sanctioned via the Crime Control Consent Act of 1934. The Court also found that the Act was an appropriate subject of congressional legislation. *Id.* at 441–442, 101 S.Ct. at 708. The Interstate Agreement on Detainers establishes procedures for the transfer of a prisoner in one jurisdiction to the temporary custody of another jurisdiction for the disposition of pending criminal charges in the receiving jurisdiction. *Id.* at 443–444, 101 S.Ct. at 709–710. The Interstate Agreement on Detainers, unlike interstate

corrections compacts, is truly related to the "enforcement ... of the criminal laws and policies" of the respective states.

2. Indeed, as both the *Opinion of the Justices* and *Cameron* cases noted, the matters dealt with in the interstate corrections compacts appear to be solely of local concern and to have no effect upon federal interests. 184 N.E.2d at 355; 645 F.Supp. at 1127. Consequently, since such compacts would not "tend to increase the political power of the states," congressional consent is unnecessary in the first place. *Cuyler*, 449 U.S. at 440, 101 S.Ct. at 708.

■ Plaintiff's concern about his claims against defendants Riveland, Kincheloe, Spalding, Blodgett and Morgan for improper screening, training, supervision and retention of personnel can be easily clarified.

One of the counts in plaintiff's first amended complaint alleges "negligent screening, training, supervision and retention of personnel" by defendants Riveland, Kincheloe, Spalding, Blodgett and Morgan. As the court noted previously, "mere negligence" is not sufficient to state a section 1983 claim. *Daniels v. Williams,* 474 U.S. 327, 330–33, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986). However, this court also stated that the complaint was sufficient to allege a supplemental claim under Washington State tort law regarding negligent actions by a supervisor. In so holding, the court did not wish to indicate that a supervisor may not be found liable for constitutional deprivations he personally participates in through his failure to train or supervise, provided such "participation" rises to the level of gross negligence, recklessness or deliberate indifference. A supervisor also "personally participates" in constitutional deprivations which are the result of the actions of subordinates specifically performed at the supervisor's direction. *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 680 (9th Cir.1984).

■ Upon its initial examination of the amended complaint, this court concluded that plaintiff had alleged only mere negligence against defendants Riveland, Kincheloe, Spalding, Blodgett and Morgan. The court has re-examined the amended complaint and notes that as part of his general allegations, plaintiff alleges that all of the defendants were "deliberately indifferent" to plaintiff's constitutional rights. Plaintiff also alleges that defendants Riveland, Kincheloe, Spalding and Blodgett are state officials with final policymaking authority "and they have acquiesced in the abuses of authority, as alleged herein, by the other named defendants."

The court is required to liberally construe a pro se complaint. Rather than require a further amendment of the complaint and cause further delays in this litigation, the court construes the amended complaint to allege a proper section 1983 claim against defendants Riveland, Kincheloe, Spalding, Blodgett and Morgan for improper training, supervision, retention and screening of subordinates amounting to gross negligence, recklessness and/or deliberate indifference to plaintiff's constitutional rights (access to courts, freedom from improper censorship and freedom from cruel and unusual punishment).[3]

The defendants can test the sufficiency of this claim by summary judgment. The plaintiff would then under Fed.R.Civ.P. 56 and Local Rule 56 be required to establish the existence of such a claim. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

■ Plaintiff contends that his first amended complaint does not allege a cause of action based solely on violations of the Washington Administrative Code (WAC) and Washington State Penitentiary policy. Rather, plaintiff contends that by way of various sections of the WAC, the State of Washington has created a liberty interest such that inmates have an expectation that they will not be subject to abusive conditions of confinement. Plaintiff notes that the due process clause has a substantive component which bars arbitrary and wrongful govern-

---

Furthermore, a compact will not become federal law simply because Congress enacts consent legislation. The historical practice of states in submitting multilateral compacts for congressional approval "may simply reflect considerations of caution and convenience on the part of submitting states, but it is not controlling." *See U.S. Steel Corp. v. Multistate Tax Commission,* 434 U.S. 452, 471, 98 S.Ct. 799, 812, 54 L.Ed.2d 682 (1978) and *Washington Metro. Areat T.A. v. One Parcel of Land,* 706 F.2d 1312, 1317 (4th Cir.1983).

3. If defendants feel an amendment of their answer is necessary to address these allegations, they may freely submit such a pleading.

The parties are asked to examine *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The court has some concern whether gross negligence or recklessness continues to suffice as a standard of liability for section 1983 claims, especially those claims concerning improper training and supervision.

ment actions, regardless of the procedures used to implement those actions.

In its prior order, the court found that plaintiff's allegations concerning conditions of confinement were sufficient to state a claim pursuant to the Eighth Amendment. The court perceives no meaningful distinction between plaintiff's Eighth Amendment claim and his substantive due process claim concerning conditions of confinement. Plaintiff has not shown how the Due Process Clause affords him any greater protection than the Eighth Amendment. Plaintiff's substantive due process claim is redundant. *See Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1408 (9th Cir.1989).[4]

Plaintiff's motion for reconsideration (Ct. Rec. 52) is GRANTED IN PART and DENIED IN PART.

## INTERLOCUTORY ORDER

Plaintiff moves the court for an interlocutory order pursuant to 28 U.S.C. § 1292(b). Plaintiff alleges that his claim the Western Interstate Corrections Compact should be treated as federal law "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

Even if the court were to admit that the compact issue involves a controlling question of law on which there is a substantial difference of opinion, an immediate appeal of the issue would not materially advance the ultimate termination of the litigation. The compact claim is but a small part of plaintiff's complaint. The majority of his complaint is dedicated to constitutional claims. Resolution of the compact issue would not resolve these constitutional claims.

Accordingly, plaintiff's motion for an interlocutory order (Ct.Rec. 51) is DENIED.

## EXTENSION OF TIME

Plaintiff moves for an additional extension of time to complete discovery for the following reasons: 1) he is housed in involuntary segregation in New Mexico and can expect to receive only twelve (12) hours per month of law library access; 2) New Mexico prison officials have not cooperated with him in setting up telephonic depositions and it may be necessary for plaintiff to file a writ of habeas corpus in that regard; 3) plaintiff originally requested an extension through August 31, 1993 and he is restricted in his ability to conduct discovery because of his incarceration; 4) the court's resolution of plaintiff's motion for reconsideration may affect the scope of discovery which plaintiff needs to conduct.

Defendants have not opposed the motion, although the court notes that the motion was mailed to counsel only as of March 24, 1993 (Ct.Rec. 60). Plaintiff has not formally moved for an expedited hearing on his motion pursuant to this court's local rules. Nonetheless, in deference to plaintiff's pro se status, the court will entertain the motion at this time.

The court notes that its revised scheduling order called for a discovery deadline of March 26, 1993. That deadline has obviously passed. Plaintiff's distance from this court, from the defendants, and from defendants' counsel persuades the undersigned that an extension of time is justified. However, in the absence of truly compelling circumstances, the court will not consider any further extensions of time.

Plaintiff's motion for extension of the discovery deadline (Ct.Rec. 58) is GRANTED and the court's prior scheduling order (Ct. Rec. 38) is VACATED. The following schedule shall now apply:

1. JOINDER. Additional parties, if any, shall be joined no later than *thirty days* after the date of this order.

2. MOTIONS FOR EXTENSION OF TIME. Should either party seek a motion for extension of time during the pendency of the case, that motion shall automatically be noted by the Court Clerk for expedited re-

---

**4.** In footnote 10, the circuit cites *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) and observes that the Supreme Court has held that claims of abusive governmental conduct which implicate specific constitutional rights must be analyzed as a violation of that right, rather than as a violation of substantive due process.

view (5 days after receipt of the motion by the Clerk) *PROVIDED* the following representations are made in the affidavit in support of the motion:

a. The parties have consulted with each other regarding the extension of time and have failed to resolve the issue by submission to the court of a stipulated order.

b. The moving party files the motion in a timely fashion (prior to the expiration of time at issue) or shows good cause why the motion has not been previously filed.

c. If the court grants the motion, all subsequent dates outlined in the scheduling order shall remain in full force and effect, absent a showing of good cause.

3. WITNESS LIST. Plaintiff shall file and serve a final witness list on or before June 1, 1993; defendant shall file and serve a final witness list on or before June 16, 1993. These lists shall contain the name and address of each witness and a summary of testimony. Except for rebuttal and/or impeachment, these lists shall not be supplemented absent a showing of good cause. The party and/or attorney listing a witness who is not called to testify shall pay the discovery costs, including attorney fees, subject to review by the court to prevent a manifest injustice.

5. DISCOVERY. All discovery shall be completed by August 31, 1993. THE PARTIES SHALL FILE NO FURTHER DISCOVERY EXCEPT THOSE PORTIONS NECESSARY TO SUPPORT MOTIONS.

6. DISPOSITIVE MOTIONS. Dispositive motions with supporting briefs and L.R. 56 statements shall be filed and served no later than September 27, 1993. Responses shall be filed and served no later than twenty days after filing of the dispositive motion, with replies, if any, to be filed and served no later than ten (10) days following the filing of the responses. Unless telephonic oral argument is affirmatively requested through the motion caption or response, the motions shall be heard without oral argument at 1:30 P.M., November 8, 1993.

PLAINTIFF IS FURTHER ADVISED if the defendants file a motion for summary judgment pursuant to Fed.R.Civ.P. 56, *plaintiff is required to respond to the factual assertions in the motion to avoid this court's conclusion the facts as reported by defendants are uncontroverted.* Plaintiff should further develop the facts in his complaint with additional evidence from affidavits, depositions, answers to interrogatories and admissions that establish a genuine issue of fact for trial. Furthermore, pursuant to Local Rule 56, the specific facts relied upon by plaintiff must be written in serial form and refer to the specific portion of the record where each fact is established. Any uncontroverted fact is admitted to exist without controversy. *See* Local Rule 7, Eastern District of Washington, for further procedural requirements. Regardless of whether a party is represented by an attorney, the party is responsible for understanding the requirements in the federal and local rules.

7. EXHIBIT LIST. Exhibit lists shall be filed and served and exhibits made available for inspection (or copies provided) on or before October 18, 1993. Objections to exhibits shall be filed and served on or before November 1, 1993 and shall be heard at the pretrial conference. All exhibits shall be pre-marked: plaintiff's are to be numbered 1 through 99; defendants' are to be numbered 100–199.

8. DEPOSITIONS. Relevant, substantive deposition testimony (as distinguished from impeachment testimony) shall be highlighted by colored marker and served on the opposing party before October 18, 1993. Cross-designations of relevant deposition testimony shall be highlighted in a different color and served on the opposing party on or before November 1, 1993. Objections to any designated deposition testimony shall be filed and served on or before November 15, 1993. Those objections will be heard and resolved at the pretrial conference.

9. MOTIONS IN LIMINE. All unresolved substantive or evidentiary issues which may foreseeably arise during trial shall be addressed by motions in limine to be served and filed not later than November 29, 1993. Such motions will be addressed and resolved at the pretrial conference.

10. Before November 22, 1993, counsel for defendants shall advise the court by letter if an agreed SETTLEMENT has been

reached. If a settlement is not reached, defendants' counsel shall propose a series of dates on which to hold a settlement conference in the chambers of the undersigned or at the Washington State Penitentiary. If either party has an objection to the undersigned's involvement in settlement, the matter shall be referred to another magistrate judge.

11. The PRETRIAL CONFERENCE will be held in Yakima, Washington, December 13, 1993 at 9:00 a.m. A proposed pretrial order must be lodged three days prior to the pretrial conference in compliance with Local Rule 12. If counsel agree on a pretrial order, counsel need not appear at the pretrial conference unless there are unresolved motions or objections to be heard. If oral argument is necessary, it will be by telephone. Defendant(s) will initiate the call to Judge Hovis at (509) 454–5772.

12. TRIAL. Requested voir dire questions, proposed jury instructions and trial briefs shall be filed and served no later than January 10, 1994. Jury selection will commence January 18, 1994 at 9:00 a.m. in Yakima. Trial will commence immediately thereafter.

The State of Washington shall transport plaintiff to the Yakima County Jail on or before January 14, 1994, be responsible for his security when he is in Yakima, have him available for jury selection on January 18, 1994; and shall return plaintiff to his correctional facility at the close of trial.

IT IS SO ORDERED. The Clerk of the Court is directed to enter this order and furnish copies to plaintiff and to counsel for defendants.