15 F.3d 1095
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Teresa WALLIN, individually and as a taxpayer; Seymour
Paperno, as a taxpayer, Plaintiffs-Appellees,
v.
CITY OF LOS ANGELES, Daryl Gates, Chief; David Dotson,
Chief; Captain Brennan; Jeff Bertrand, Lieutenant; in
their official and individual capacities; JAMES JOY,
Officer; in his individual capacity; and DOES 1-50,
inclusive. Defendants-Appellants.
 No. 92-55954.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 31, 1994.
Decided Feb. 3, 1994.
 
 Before: TANG, PREGERSON, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Los Angeles Police Chief Daryl Gates and Officers Dotson, Brennan, and Bertrand of the Los Angeles Police Department ("LAPD") [collectively "LAPD Officers"] appeal the district court's order denying their motion for summary judgment, based on qualified immunity, in LAPD Officer Teresa Wallin's 42 U.S.C. Sec. 1983 action. Wallin alleges that LAPD Officers violated her equal protection rights, her privacy rights, her due process rights, and her right to petition the government, when they inappropriately responded to her complaint of sexual assault by Officer James Joy. We dismiss this appeal for lack of jurisdiction.
 
 BACKGROUND
 
 3
 Appellee Teresa Wallin ("Wallin") is a police officer with the LAPD. On May 30, 1991, Officer James Joy ("Joy") allegedly raped Wallin, and LAPD Internal Affairs Division ("IAD") investigated the matter. Officer Wallin subsequently filed a 42 U.S.C. Sec. 1983 claim for damages against Police Chief Daryl Gates ("Gates"), Assistant Police Chief David Dotson ("Dotson"), Captain Gary Brennan ("Brennan"), Lieutenant Jeffrey Bertrand ("Bertrand"), and Joy. Officer Wallin claimed that all defendants violated her constitutional right to privacy, and that all except Joy violated her rights to equal protection, due process, and to petition the government.
 
 
 4
 The following is Officer Wallin's version of the facts. LAPD Officers violated LAPD confidentiality regulations and repeatedly threatened her with intimidation and disciplinary action. For example, when Wallin initially spoke with investigator Bertrand, he threatened that she would be disciplined, even terminated, for not admitting the rape and reporting the crime. (ER 182 p 5). He also threatened that IAD would order her to see the LAPD counselor if she did not do so voluntarily. (ER 22-23). Furthermore, Bertrand attempted to deny Officer Wallin representation in the investigation: He threatened to initiate a misconduct investigation based on allegations, which he knew were baseless, of a sexual relationship between Wallin and her employee representative. (ER 184 p 13). Also, Wallin's patrol captain and Joy's ex-partner both contacted her after hearing about IAD's investigation--in breach of the duty of confidentiality. (ER 182 paragraphs 7-8).
 
 
 5
 During the following two weeks, Officer Joy, the alleged rapist, called Officer Wallin at home and at work every few hours and told her not to disclose any information to IAD. (ER 183 p 12). He told Wallin that no one would believe her and threatened her with physical harm if she followed up on her report to IAD. (ER 184 p 14). When Wallin reported Joy's threats and harassment and asked for protection, IAD investigators refused unless she disclosed everything about the rape. (ER 183-84 paragraphs 12, 15). After Officer Wallin submitted a psychiatrist's letter that advised IAD not to interrogate her further, (ER 96), IAD directed Joy to have no contact with Wallin. Joy asked male officers for information on Wallin's sex life, recruited others to make similar inquiries, and asked her co-workers for "dirt" on her. (ER 185 p 17). LAPD Officers allowed semi-nude photographs, taken of Wallin for IAD's investigation,[1] to be circulated in the office. (ER 191-92 p 40).
 
 
 6
 Officer Wallin concludes that LAPD Officers unreasonably delayed investigation of her complaint by assigning it low priority and by declining to refer the case for prosecution, which infringed on her constitutional right to petition the government and amounted to unconstitutional gender discrimination. When Wallin complained about delays in the investigation, Bertrand and Brennan allegedly threatened to terminate her if she discussed the case with anyone and told her not to expect LAPD to discipline Joy or seek criminal prosecution. (ER 186-87 paragraphs 83-84). Officer Wallin, in her declaration opposing summary judgment, offers to prove a pattern of gender discrimination, illustrated by several cases where female officers complained of sexual assault and the IAD took no action against the male officer and sometimes retaliated against the female officer. (ER 187-190).
 
 
 7
 LAPD Officers moved for summary judgment, asserting qualified immunity as an affirmative defense. LAPD Officers contended that the IAD investigation was conducted in conformance with the law and consistent with all other investigations into alleged misconduct by LAPD personnel. (Answer, ER 53 p 28). IAD investigators interviewed several witnesses, obtained photographs of Wallin's bruises, and analyzed Wallin's bed linens. Denying gender discrimination and infringement of Wallin's right to petition, they attributed any delay in the investigation to Wallin's initial denials of misconduct and to IAD investigators' subsequent inability to speak with her. (ER 79 p 15). And, according to LAPD Officers, any alleged "threats" made to Wallin were accurate statements of LAPD regulations.
 
 
 8
 Specifically, Gates, Dotson, and Brennan maintain on appeal that they did not participate in the alleged misconduct. Gates, as Police Chief, contends that IAD has primary responsibility for investigations and that he did not learn about Wallin's case until she filed suit. (ER 69 p 4). Dotson, who served as the Commanding Officer of the Office of Administrative Services, states that he was briefed on Wallin's complaint and notified the Headquarters Bureau that supervised Joy's division, but denies that he participated in or direct others in the investigation. (ER 71-72 p 3). Brennan, as Chief Investigator of IAD, was responsible for supervising investigators on Wallin's case to ensure that they enforced LAPD policies and regulations. (ER 77-78 paragraphs 10-11).
 
 
 9
 Bertrand denies that he acted improperly. Bertrand was responsible for investigating Wallin's complaint until October 1991. (Answer, ER 49 p 8). He contends that he never questioned any witness about Wallin's sexual history or revealed photographs of her and that he strived to pursue the complaint vigorously. (ER 86-87 p 13; ER 87-88 p 14). His "threats" to Wallin were valid recitations of LAPD regulations.[2]
 
 
 10
 The district court denied LAPD Officers' motion. They appeal.
 
 ANALYSIS
 
 11
 LAPD Officers contend that the district court erred by denying each of them qualified immunity, when it denied their motion for summary judgment in Wallin's Sec. 1983 action. A district court's denial of a motion for summary judgment is not a final decision within the meaning of 28 U.S.C. Sec. 1291, and therefore, ordinarily is not appealable. Duran v. City of Douglas, 904 F.2d 1372, 1375 (9th Cir.1990) (citation omitted). However, under the collateral order doctrine, a "court's [summary] denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable final decision...." Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 531 (1985)). "So long as the issue on appeal 'is a purely legal'--whether the facts alleged by the plaintiff support a claim of violation of a clearly established constitutional right--we have jurisdiction." Id. (quoting Mitchell, 472 U.S. at 528, n. 9).
 
 
 12
 Stated differently, we have jurisdiction to review a district court's denial of a defendant's motion for summary judgment based on qualified immunity where it "involves a legal issue 'conceptually distinct' from the merits of [a] plaintiff's claim." Velasquez v. Senko, 813 F.2d 1509, 1511 (9th Cir.1987) (quoting Mitchell, 472 U.S. at 528). On the other hand, where a denial of qualified immunity presents disputed factual issues that are bound up in the underlying claim, the appeal of an order denying summary judgment does not involve a purely legal issue and we lack jurisdiction to hear the appeal. Id. (dismissing the appeal of a denial of summary judgment where the appellants, Immigration and Naturalization Service agents, framed the qualified immunity issue to turn on whether they were present or otherwise participated in raids that led to appellees' arrests).
 
 
 13
 Here, we conclude that we lack jurisdiction to address the qualified immunity issue, because essential facts going to the merits of Wallin's claim are in dispute. Rather than arguing the legal issue that a reasonable officer could believe the alleged conduct was lawful, LAPD Officers dispute Wallin's version of the facts. Whereas Wallin urges a finding of gender discrimination and interference with her right to petition, LAPD Officers describe a conscientious and timely investigation that complied with LAPD regulations and applicable law. (Appellants' Opening Br., pp. 21-22).
 
 
 14
 Bertrand specifically raises a factual dispute when he asserts that he acted properly, for example, in his discussions with witnesses. (Appellants' Opening Br., p. 27). Gates, Dotson, and Brennan contend that Wallin failed to connect them to the alleged misconduct and that their conduct did not violate clearly established law. (Appellants' Opening Br., pp. 13-18, 27); see Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680 (9th Cir.1984) ("A supervisor cannot be held personally liable under Sec. 1983 for the constitutional deprivations caused by his subordinates, absent his participation or direction in the deprivation."). Their claim is similar to the claim made by INS agents in Velasquez, which caused us to conclude that the qualified immunity issue was too bound up with factual disputes to be appealable. We recognize that they assert more than non-participation in the alleged events. Cf. Velasquez, 813 F.2d at 1511 (appellants claimed only non-participation and nowhere claimed that the appellees failed to show that the law that appellants allegedly violated was clearly established). However, LAPD Officers' contention that they did not violate any clearly established law at best makes the qualified immunity issue a mixed question of law and fact.[3] Because this appeal does not present a purely legal issue of whether LAPD Officers can be held liable for specific conduct, under Velaquez we must dismiss this appeal for lack of jurisdiction.[4]
 
 
 15
 DISMISSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Officer Wallin agreed to have her bruises photographed. Though Wallin told the investigator, Officer Tammy Tatreau, that there were no bruises on her buttocks, Tatreau insisted on photographs. Tatreau refused to give Wallin a robe or towel to cover her body parts. (ER 183 p 11)
 
 
 [2]
 Officer Joy was not party to the summary judgment motion and does not appeal the court's decision. (ER 207 (notice of appeal))
 
 
 [3]
 Because Officer Joy is not a party to the appeal, we need not address the argument in LAPD Officers' brief that Wallin cannot sue Joy as an individual for alleged constitutional violations, because of a lack of state action
 
 
 [4]
 Applying the rules for qualified immunity to this case further convinces us that we should dismiss the appeal for lack of jurisdiction. An officer is entitled to qualified immunity even if "the law governing [his] conduct [was] clearly established[,]" so long as "[u]nder that law, ... a reasonable officer [could] have believed the conduct was lawful[.]" Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir.1993). LAPD Officers do not dispute whether an employee's rights to privacy and equal protection were clearly established in 1991 or whether an officer could reasonably believe that it was lawful to mishandle deliberately a female officer's complaint of sexual assault. Whether LAPD Officers' conduct violated Wallin's constitutional rights is a question for trial, not a question of qualified immunity