Calvin HENDERSON, P. O. Box 9901, Pittsburgh, Pa., 15233, Appellant,

v.

Michael D. FISHER, A. D. Atty.; Robert Zunich, A. D. Atty.; John Pope, Private Atty.; Dave Lichtenstein, Private Atty.; Margarette Reilly, Nurse; Donald Dorsey, Off. University; James Chester, Off. University; Edward Foster, Former Off. University, Pitts., Pa., Allegheny County, Pa.

No. 78–2244.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 21, 1980.

Decided Aug. 20, 1980.

As Amended Sept. 25, 1980.

---

Calvin Henderson, State Correctional Institution, pro se.

Jon Hogue, Titus & Marcus, Pittsburgh, Pa., amicus curiae, for appellant.

Alexander J. Jaffurs, County Sol., Charles T. Pankow, Allegheny County Law Dept., Robert B. Marcus, David L. Lichtenstein, P. C., John S. Sherry, Dennis R. Biondo, Asst. County Sol., Pittsburgh, Pa., for appellees.

Before ADAMS, HUNTER and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

PER CURIAM:

■ 1. Calvin Henderson brought an action under the Tort Claims Act, 28 U.S.C. §§ 2671 to 2680 (1976) seeking redress for alleged constitutional violations arising out of his trial and conviction for sexual assault in the Pennsylvania Court of Common Pleas, Criminal Division of Allegheny County. As defendants he named three campus police officers at the University of Pittsburgh, his privately retained attorneys, and two assistant district attorneys. Noting the inapplicability of the Tort Claims Act, which applies to federal but not state employees, the magistrate, to whom the case was initially assigned, treated the plaintiff's complaint as a demand for relief based on the Civil Rights Act, 42 U.S.C. § 1983 (1976). The magistrate's treatment of the complaint as stating a cause of action under the civil rights laws is consistent with the policy of liberally construing a pro se litigant's complaint. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

2. Each defendant filed a motion to dismiss the complaint. The magistrate recommended to the district court that the complaint be dismissed against the district attorneys because they were immune from suit. The magistrate further recommended that the complaint against the campus police officers and private attorneys be dismissed on the ground that the state action requirement of 42 U.S.C. § 1983 (1976) was not met. On the basis of the magistrate's recommendations, the district court dismissed the complaint as to all defendants. Henderson appeals the dismissal of the complaint.[1]

3. Having reviewed the district court's order, this court has decided that the portion of the order dismissing the complaint against one of the campus police officers and the two assistant district attorneys will be reversed. The remainder of the district court order will be affirmed.

4. Henderson was arrested in the predawn hours of October 23, 1973 by three campus police officers of the University of Pittsburgh and taken to the local police station. The victim had described her attacker as dressed in "jeans." At the time of arrest, which occurred shortly after the commission of the crime, Henderson was dressed in red trousers. Thus Henderson's clothing had evidentiary value for the purpose of identification. While Henderson was in police custody his clothing was seized and locked in an evidence locker under the jurisdiction of the police. On the morning of trial one of the three arresting campus police officers signed to remove the clothing from the locker. The clothes have not been returned to the court nor has an explanation for their removal been given. Henderson charges the police officer with removing evidence which would exculpate him.

5. Although the lawyer who represented Henderson at trial was an associate of the attorney Henderson had hired, he had not previously met his client. Henderson complains that the substitution of lawyers worked to his detriment in that the new lawyer, unfamiliar with the case, "did not even try to adequately represent" Henderson. Henderson's complaint against the assistant district attorneys charges that they knew of the removal of the exculpatory evidence but failed to take corrective action. These allegations in the complaint must be deemed true for the purpose of deciding a motion to dismiss for failure to state a claim for relief under Fed.R.Civ.P.

---

1. We would like to express our appreciation to Jon Geoffrey Hogue for acting as amicus curiae and submitting a brief addressing the sufficiency of Henderson's complaint.

12(b)(6). *Bryson v. Brand,* 621 F.2d 556 (3d Cir. 1980). The district court concluded that these allegations did not support a claim for relief under 42 U.S.C. § 1983 against the police officers and attorneys.

6. "Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color of any statute, ordinance, regulation, custom, or usage of any State or Territory.'" 42 U.S.C. § 1983. *Gomez v. Toledo,* —— U.S. ——, 100 S.Ct. 1920, 1922, 64 L.Ed.2d 572 (1980). Section 1983 should be "construed generously" to further the Congressional purpose of providing a damage remedy against the offending party in order to vindicate "cherished constitutional guarantees." *See id.; Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 1414, 63 L.Ed.2d 673 (1980). To ascertain whether Henderson has stated claims for relief under 42 U.S.C. § 1983 against the campus police and private attorneys this court must first determine whether their acts are actions "under color of any statute, ordinance, or regulation, custom or usage of any State or Territory." 42 U.S.C. § 1983 (1976). If this state action requirement is satisfied, we must next determine whether the acts of the campus police or attorneys deprived Henderson of any constitutionally guaranteed rights. In reviewing the dismissal of the complaint against the prosecutors, we must determine whether absolute prosecutorial immunity extends to the facts alleged here.

### I. The Campus Police Liability Under Section 1983.

■ 7. The district court, on the basis of the magistrate's suggestion, determined that the acts of the campus police of the University of Pittsburgh did not satisfy the color of state authority requirement of 42 U.S.C. § 1983. Therefore, the district court dismissed the complaint against the campus police. We do not agree with the conclusion of the district court that the acts of the campus police of the University of Pittsburgh are private acts, not performed under color of state authority. By the University of Pittsburgh–Commonwealth Act, Pa.Stat. Ann. tit. 24, §§ 2510–201 to 211 (Purdon Supp. 1979–80), the University of Pittsburgh has lost its wholly private character, and has become "an instrumentality of the Commonwealth to serve as a State related institution." Pa.Stat.Ann. tit. 24, § 2510–202(6) (Purdon Supp. 1979–80); [2] *see* Note, 52 N.Y.U.L.Rev. 1401 (1977). Therefore, the Pennsylvania legislature has itself declared that the University of Pittsburgh derives its authority from the state. Although this is itself persuasive of the presence of state action, we further note that the Pennsylvania legislature has delegated to the campus police of the University of Pittsburgh the very powers which the municipal police force of Pittsburgh possesses. Pa.Stat.Ann. tit. 71, § 646 (Purdon Supp. 1979–80).

■ 8. Actions that would otherwise be deemed "private" may be so "impregnated with a governmental character" as to be limited by the constitutional restrictions on state action. "That is to say, when private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state and subject to its constitutional limitations." *Evans v. Newton,* 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1965). Therefore, the delegation of police powers, a government function, to the campus police buttresses the conclusion that the campus police act under color of state authority. For these reasons the district court's conclusion that the cam-

---

2. The statute provides: "Therefore, it is . . . the purpose of this Act to extend Commonwealth opportunities for higher education by establishing University of Pittsburgh as an instrumentality of the Commonwealth to serve as a State-related institution in the Commonwealth system of higher education." Pa.Stat. Ann. tit. 24 § 2510–202(6) (Purdon Supp. 1979–80). *See Braden v. University of Pittsburgh,* 552 F.2d 948, 959 (3d Cir. 1977). *See also Isaacs v. Board of Trustees of Temple University,* 385 F.Supp. 473 (E.D.Pa.1974), cited with approval in *Benner v. Oswald,* 592 F.2d 174, 180 (3d Cir. 1979), and in *Chalfant v. Wilmington Institute,* 574 F.2d 739, 744 n.8 (3d Cir. 1978) (en banc).

pus police did not satisfy the state action component to the 42 U.S.C. § 1983 claim for relief is erroneous and will be reversed.

9. In addition to alleging state action, Henderson must, in order to state a claim for relief under 42 U.S.C. § 1983, complain of the abrogation of a constitutionally protected right by the acts of the campus police. Henderson's allegations that one of the campus police officers, Foster, removed the clothes from the police evidence locker in order to prevent him from introducing them as exculpatory evidence in support of a defense of mistaken identity states a violation of constitutional rights. To deny a defendant an opportunity to present competent proof in his defense constitutes a violation of a fair trial and of due process. *Clack v. Reid*, 441 F.2d 801, 804 (5th Cir. 1971). Therefore, Henderson's complaint sufficiently states a cause of action against Foster under 42 U.S.C. § 1983. Henderson does not allege that the remaining two campus policemen participated in removing the evidence. He does not, therefore, complain of constitutional harm perpetrated by them. Because he fails to allege that they committed constitutional wrong, 42 U.S.C. § 1983 does not serve as a basis of liability. Therefore the district court's dismissal of the complaint against them is affirmed.

## II. *The Private Attorneys' Liability Under Section 1983.*

10. Next we must determine whether Henderson has stated a cause of action under 42 U.S.C. § 1983 against his attorneys. Once again we must decide whether the state action requirement of 42 U.S.C. § 1983 is satisfied and determine whether the attorneys are persons who act "under color of any statute, ordinance, regulation, custom or usage of any State or Territory." 42 U.S.C. § 1983.

11. Although states license lawyers to practice, and although lawyers are deemed "officers of the court," this is an insufficient basis for concluding that lawyers act under color of state law for the purposes of 42 U.S.C. § 1983. Liability under 42 U.S.C. § 1983 cannot be predicated solely on the state's licensing of attorneys. Participation in a highly regulated profession does not convert a lawyer's every action into an act of the State or an act under color of state law. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 355, 95 S.Ct. 449, 455, 42 L.Ed.2d 477 (1974).

12. Nor does *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) require a finding of state action. In *Sullivan*, the Supreme Court held that the failure of privately retained attorneys to render effective assistance of counsel at trial involves state action that is susceptible to federal habeas corpus review. But in *Sullivan*, although the acts of the attorneys were questionable, those acts did not provide the state action link necessary for a constitutional deprivation. Rather, the "state criminal trial, a proceeding initiated and conducted by the state itself, is an action of the state within the meaning of the Fourteenth Amendment." *Id.* The status of the lawyer, whether privately retained or court appointed, was irrelevant to the determination of state action for purposes of federal habeas corpus review of alleged violations of the sixth amendment guarantee of effective assistance of counsel. *Sullivan* did not equate the acts of private counsel with state action and therefore does not make private attorneys liable under 42 U.S.C. § 1983. *Sullivan* does not change the rule of *Jackson*, that lawyers and other persons who participate in regulated or licensed businesses do not "act under color of state law" for purposes of liability under 42 U.S.C. § 1983. *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 355, 95 S.Ct. at 455, 42 L.Ed.2d 477 (1974). Because the district court correctly concluded that the acts of the lawyers lacked state action, the dismissal of the complaint against the lawyers will be upheld. It is therefore unnecessary to decide whether substitution of lawyers deprived Henderson of any constitutional right.

## III. *The Prosecutorial Liability Under Section 1983.*

13. The next task on review is to determine whether the district court cor-

rectly dismissed the complaint against the prosecutors. The district court based its dismissal on prosecutorial immunity. In *Imbler v. Pachtman*, the Supreme Court outlined the contours of the immunity applicable to state prosecutors under section 1983 and held that prosecutors are absolutely immune from liability in "initiating a prosecution and presenting the State's case." 424 U.S. 409, 430–31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1975). Thus, we must first determine whether the allegations against the state prosecutors here fit within the *Imbler* test of "initiating and presenting" the State's case. If we conclude affirmatively, the shield of absolute immunity attaches and our inquiry is at an end.

14. ˙ Henderson alleges that the prosecutors knew that his clothing was removed from the police locker, and that the "clothing evidence" would have acquitted him yet failed to take any corrective action. Henderson further alleges that this violates official responsibilities.

 15. The handling of evidence is clearly within the sweep of "initiating and presenting the State's case", and the prosecutor is immune from Section 1983 liability for such decisions. *Imbler v. Pachtman*, 424 U.S. 409, n. 33 at 431, 96 S.Ct. 984, n. 33 at 995, 47 L.Ed.2d 128 (1975). But the facts here alleged, knowing failure to preserve exculpatory evidence which was removed the morning of trial, present a more difficult question of whether such prosecutorial omission is within the absolutely protected scope of "presenting the State's case." The *Imbler* Court recognized that determining when the prosecutor acts in his advocate's role—which has absolute immunity—and when he acts in his administrative or inves-

tigative roles would be a difficult task. *Id.* But although the facts here present a very close question, it is difficult to characterize a prosecutor's knowing failure to stop the removal of exculpatory material as "presenting the State's case." Therefore, the prosecutorial act is protected from § 1983 liability by qualified, not absolute, immunity. *Forsyth v. Kleindienst*, 599 F.2d 1203, 1211–16 (3d Cir. 1979).

16. Therefore, the district court erred in dismissing the action against the prosecutors on the basis of absolute immunity.[3]

17. The order of the district court dismissing the action against the campus police officer, Foster, and against the assistant district attorneys will be reversed. The district court's order will in all other respects be affirmed.

ADAMS, Circuit Judge, concurring in the judgment.

Although I concur in most of the opinion of the Court, I write separately because, in my view, the majority need not and should not decide the question whether, by virtue of the University of Pittsburgh–Commonwealth Act,[1] the University of Pittsburgh has become an instrumentality of the state in all contexts for the purpose of determining whether the conduct of its employees constitutes "state action." This is an issue of considerable importance that has not yet been definitively resolved. In my view, it should be decided only after the relationship between the University and the Commonwealth has been fully explored at trial and the obdurate legal questions involved in the state action inquiry have been briefed and argued by the parties.[2]

3. As it was not raised, we express no opinion as to whether this complaint as drafted satisfies this court's requirement that claims brought under the Civil Rights Act allege *specific facts* in support of the conclusions drawn in the complaint. *See Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978); *Kauffman v. Moss*, 420 F.2d 1270, 1276 n. 15 (3d Cir. 1970); *Negrich v. Hohn*, 379 F.2d 213 (3d Cir. 1967). Nor need we attempt a resolution of the competing doctrines requiring factual specificity in civil rights cases and liberal

construction of allegations in pro se complaints. *Compare Negrich* with *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

1. 24 Pa.Cons.Stat.Ann. §§ 2510–201 to 2510–2011 (Purdon Supp. 1980).

2. In this case, none of the parties addressed the state action question. The issue was raised in a brief filed only by an amicus curiae. The matter has also been decided without the benefit of oral argument.

The Court sitting en banc in *Braden v. University of Pittsburgh*,[3] grappled with the very limited question whether, based on the record available at the time, the district court erred in refusing to dismiss a § 1983 claim against the University on the ground that the University's alleged discrimination against certain women faculty members was not state action. The district court had held merely that "the relationship between Pitt and the Commonwealth is such as to preclude a *summary determination* that the activities of the educational institution occur outside the ambit of state action."[4] The trial court did not conclude, nor did we purport to decide, the more general question whether the University of Pittsburgh–Commonwealth Act had converted all conduct by the University and its employees into state action.

When we affirmed the decision of the district court in *Braden*, we were highly cognizant of both the importance of the tentative finding of state action and the need to develop a full factual record before conclusively deciding the matter. We recognized that a consequence of holding the University to be a "state–like" actor might be the erosion of educational autonomy and diversity:[5] "Should this case be allowed to proceed, and state action ultimately held to exist, then the University may be subjected to some of the constitutional and statutory strictures ordinarily applied to the state."[6] Before adjudicating the merits of the appeal from the denial of the motion to dismiss, we ordered the district court to conduct an evidentiary hearing on the state action question,[7] and we postponed final determination of the issue until the matter had been fully litigated at trial.[8]

In contrast to the high degree of caution exhibited by the full Court in *Braden*, the majority today appears to decide that, by virtue of the University of Pittsburgh–Commonwealth Act, the actions of University employees, even those outside of the educational sphere, in fact constitute state action. The majority does this without the benefit of an evidentiary hearing and in the absence of briefing by any of the parties to this appeal. Moreover, the majority does so needlessly because § 2416 of the Commonwealth's Administrative Code clearly indicates that action taken by University of Pittsburgh campus police officers in the course of their duties is state action.[9] Therefore, there is no occasion here to decide the more general question whether the University as a whole is now effectively endowed with the powers and responsibilities of the state itself. "Upon an issue of such significance, when to decide is not necessary, it may well be necessary not to decide."[10]

---

**3.** 552 F.2d 948 (3rd Cir. 1977) (en banc).

**4.** *Id.* at 955–56 (emphasis added). The opinion of the district court in *Braden* is reported at 392 F.Supp. 118 (W.D.Pa.1975).

**5.** 552 F.2d at 956 n.36 (quoting *Berrios v. Inter-American Univ.*, 535 F.2d 1330, 1333 (1st Cir. 1976)).

**6.** *Id.* at 956.

**7.** *Braden v. University of Pittsburgh*, 477 F.2d 1 (3rd Cir. 1973).

**8.** The state action question was not definitively decided in the *Braden* litigation because, following the issuance of our opinion, the parties settled the case.

**9.** Section 2416, which is codified at 71 Pa.Stat. Ann. § 646 (Purdon Supp.1980), delegates to the campus police–for the purposes of enforcing state, local, or campus law and of maintaining order on campus–essentially all powers possessed by municipal police.

**10.** *Conover v. Montemuro*, 477 F.2d 1073, 1094 (3rd Cir. 1973) (opinion of the court sur petition for rehearing en banc).